Jones v. Kohler et al.

Filed May 9, 1894.

---

No. 16,814.

JONES v. KOHLER ET AL.

NOTICE.—*Publication.*—*Real Name of Party.*—*Supposed Name.*—*Whereabouts Unknown.*—Where, in a proceeding to quiet title to land, notice thereof was given by publication to Mary Jackson, a nonresident whose whereabouts was unknown to her friends and acquaintances in this State, for about thirty-five years, the notice being given in the only name by which she was known within the jurisdiction of the State, the name by which she knew she would be dealt with in this State, the name which, when reading the notice, she would, of course, understand to apply to herself,—the notice was sufficient, notwithstanding the fact that her former husband (Jackson) had died, and she had since married, and was at the time of the notice the wife of one Jones.

SAME.—*Publication.*—*Presumption.*—*Estoppel.*—Where notice is properly given by publication, the presumption is that the party notified becomes acquainted with the notice, and he is estopped to deny it.

From the Floyd Circuit Court.

G. H. Voigt and E. B. Stotsenburg, for appellant.
W. W. Tuley and G. H. Hester, for appellees.

HACKNEY, J.—By the last will and testament of Peter Ross, probated in April, 1858, in providing for all of his children and disposing of all of his property, were made, among others, the following two bequests: "I bequeath to my daughter, Mary Jackson, * * * the house and tenements I now occupy, together with four acres of ground, embracing the orchard, provided that she come

Jones *v.* Kohler *et al.*

and live in it and occupy it,'' and ''I bequeath to my son, Eli, the home place, containing seventy acres, more or less, providing Mary takes the four acres before mentioned to reside on.''

Eli took possession of the ''home place,'' and, with his family, occupied it from the death of his father until his death.

At the time of the execution of the will, and for many years thereafter, Mary Jackson shifted about from city to city, and from State to State, without communication with her family, friends, or acquaintances in this State, and with no knowledge on their part as to her whereabouts until in 1891, and in ignorance of any change in her name or of the death of her husband.

After the death of Eli, his widow and children sued the heirs of said Peter Ross, including said Mary Jackson, to quiet the title to said ''home place,'' and, in 1878, obtained a decree in all respects regular and unobjectionable, save that the notice to said Mary was by publication to and in the name of Mary Jackson, when, as she claims, her husband, Jackson, had died in 1860, and she was again married, in 1871, to one Jones.

After the proceeding to quiet title, and in proceedings for partition, the appellee Philopœna Kohler, in 1879, became the purchaser of said ''home place,'' and now holds the same free from adverse claim, excepting that here made by Mary Jones in her suit claiming title and demanding partition.

Her complaint ignores the will of her father and treats her surviving brothers and sister as owners, in common with her, of the undivided four-fifths of said land, and she makes no reference to said proceeding and decree of 1878.

The several answers of Philopœna Kohler set up the

will, the decree, and the partition sale, and allege that at the time of said publication the appellant was known as Mary Jackson.

The evidence supported the answers, and the court found for the appellee, Mrs. Kohler.

The argument includes two questions: Did Eli Ross fail to acquire these lands by reason of the breach of the condition, if it was a condition, that Mary should take the four acres? And, was the decree quieting title void as to Mary Jones, because of the notice to her as Mary Jackson?

If a person is known by more than one name, it is a common rule that service of process by either name is sufficient. If one by his conduct leads others to believe, with reason, that a state of facts exists, it will not be permitted that such an one may deny the existence of that state of facts, and especially where the decrees of courts have been entered and investments have been made in reliance upon such facts.

Here it appears that one having property rights within this State absented herself for more than thirty-five years, abandoning those rights and withdrawing herself from the jurisdiction of the State; when she departed she was a married woman, bearing the name of her husband; the presumption of a continuation of life and that state of matrimony during the allotted time of life, and that her property rights would be held and treated with reference to such presumptions, created a duty to avoid deceiving others by concealing changes in such conditions. At least she could not complain that others, in perfect good faith, acted upon and with reference to such conditions.

The object in publishing the notice of nonresidence is that the interested party may observe that the law is about to deal with his property, and that if objection can be made

to so dealing with it, an opportunity will be afforded. When a publication is made, the presumption must prevail that the interested party becomes acquainted with the notice, at least such party will be held to have seen it, and to be estopped to deny it.

If Mary Jackson, instead of changing her name by assuming that of a second husband, had procured the change by enactment of a Legislature, without notice of such change to those who might deal, in good faith, with reference to her property, it would be without merit that she could claim to defeat the rights of those so dealing. When it is conceded that the State has the power to take jurisdiction and make disposition of the property of a nonresident, by publishing a notice of the pendency of the cause in which it is proposed to exercise that jurisdiction; and when it is conceded that the publication is held to have reached the nonresident,—such nonresident must be held bound by all that the notice contains.

In this instance the notice was given to the interested party in the only name by which she was known within the jurisdiction of this State, the only name by which, as she well knew, she would be dealt with in this State, that name in which she would necessarily be notified of the pendency of legal proceedings, and that name which, when reading the notice, she would, of course, understand to apply to herself.

Under our statute, 317, R. S. 1881, 319, R. S. 1894, neither the summons nor the service thereof may "be adjudged insufficient, where there is sufficient substance about either to inform the party on whom it may be served, that there is an action instituted against him in court, the name of the plaintiff and the court, and the time when he is required to appear."

This provision applies with equal force where the summons is by publication as where it is by personal service.

We have found but one case which would seem to conflict with our conclusion that the notice in this case was sufficient, and that is the case of *Freeman* v. *Hawkins*, 77 Texas, 498, 19 Am. St. Rep. 769, where the publication was in the name of Mary E. Robinson, who, by a marriage, had taken the name of Freeman. It was there held that because of a statutory requirement that the notice should contain the names of the parties to the action, the publication was insufficient.

Our statute does not expressly so require, and we here have the additional fact that the party served by publication was known by the name in which she was served.

Finding the notice sufficient, the decree was valid and a bar to the appellant's recovery.

The judgment of the circuit court is affirmed.

